### In re BON TON RESTAURANT AND PASTRY SHOP, INC., Debtor.

**Bankruptcy No. 85 B 1755.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 18, 1985.

**44**

Robert R. Benjamin & Associates, Ltd., Chicago, Ill., for debtor.

Cory Lipoff, Nachman, Munitz & Sweig, Ltd., Joel Greenblatt, Foss, Schuman, Drake & Barnard, Chicago, Ill., for movant/landlord.

## MEMORANDUM AND ORDER

ROBERT L. EISEN, Bankruptcy Judge.

This matter was heard upon the application of the debtor-in-possession ("Bon Ton") for authority to assume its unexpired lease of non-residential real property pursuant to 11 U.S.C. § 565(a). The landlord, Bernard A. Heerey ("Heerey" or "landlord"), contends that Bon Ton must surrender the premises unless it promptly cures all defaults under the lease as a condition to assumption or, alternatively, that the lease has been terminated by operation of law. Presently before the court is Heerey's motion to compel Bon Ton to replace its present automatic fire extinguishing system at the premises or to discontinue its operations. The resolution of the present motion requires the court to decide whether, under applicable Illinois law and the terms of the lease, the installation of a new automatic sprinkler system is the responsibility of the landlord or Bon Ton.

## BACKGROUND

On February 8, 1985, Bon Ton filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, and has continued to operate its business and manage its property as a debtor in possession. The lease in question was executed on April 6, 1981 for rental of the premises at 1151–53 North State Street, Chicago, Illinois, including storage space in the basement. As disclosed by the pleadings, memoranda, and exhibits, the entire building consists of four commercial units and twenty four rental units. Bon Ton operates a restaurant and pastry shop at the premises.

Heerey, the successor-lessor of the premises, contends in the instant motion, as well as in response to Bon Ton's application to assume the lease, that certain unsafe and hazardous conditions exist at the premises, particularly an allegedly inadequate automatic fire extinguishing system ("sprinkler system"). The landlord states that the estimated cost of replacing the present sprinkler system is $2,000. The aforementioned conditions resulted in the cancellation on January 4, 1985 of the landlord's fire and extended coverage insurance by Aetna Life & Casualty ("Aetna"). Heerey has been required to obtain less comprehensive replacement coverage from Royal Excess & Special Risks ("Royal") for an annual premium of approximately $30,000 as compared to the approximately $4,500 premium previously charged by Aetna. Royal has now indicated that it will transmit to the

landlord an official notice of cancellation of the insurance policy on July 20, 1985 if the sprinkler system is not made acceptable to Royal.

In reply, Bon Ton contends that an automatic extinguishing system complying with legal regulations and in operating order presently exists on the premises. Therefore, this court may not compel Bon Ton to replace the sprinkler system to meet specifications propounded by an insurance company.

Two paragraphs of the lease are relevant to the present motion:

*Paragraph 28.* Lessee agrees and covenants to comply with all regulations of cooking and ventilating systems as present law requires and in the event that such standards and/or devices are inadequate in accordance with the existing laws, they shall be changed and modified at Lessee's expense....

*Paragraph 37.* Lessee, at his own cost and expenses during the term of the Lease, shall maintain the demised premises in attractive appearance and good condition, making such repairs, improvements and alteration of a non-structural nature so as to insure the aforementioned conditions. For the interpretation of this intention, this shall include all components of the demised premises and the facilities and utilities which service same....[1]

Paragraph 28 of the Lease requires Bon Ton to comply with regulations required by present law with respect to the cooking and ventilating systems. The landlord in his motion has made no allegation that the sprinkler system in question does not conform to existing law. Further, at the hearing on this motion, Bon Ton represented that it presently does carry and maintain Public Liability and Property Damage insurance as required under paragraph 42 of the Lease. It appears doubtful that, were the existing sprinkler system in a hazardous and unsafe condition as alleged, Bon Ton itself would have been able to obtain insurance coverage for the premises. Heerey relies on an inspection report issued for Aetna outlining conditions on the premises that would result in the cancellation of insurance coverage if not cured. According to this report, Bon Ton's manual Ansul[2] Type fire extinguishing system does not meet underwriting standards.

It is well established that where there is any doubt or uncertainty as to the meaning of the language used in a lease it should be construed most strongly against the lessor and in favor of the lessee. *J.B. Stein & Co. v. Sandberg,* 95 Ill.App.3d 19, 22, 50 Ill.Dec. 544, 547, 419 N.E.2d 652, 655 (1981). In particular, where a landlord has drafted the lease, a court will not impose by judicial construction a responsibility upon the tenant unless the circumstances and the lease itself clearly indicate that the tenant intended to assume such a responsibility. *Barr v. Cutler,* 64 Ill.App.3d 518, 520, 21 Ill.Dec. 304, 305, 381 N.E.2d 413, 414 (1978).

Bon Ton's obligation under the lease is to comply with those regulations which present law requires. The express language of paragraph 28 does not impose upon the tenant a duty to comply with the requirements of the landlord's insurance company pertaining to the cooking and ventilating systems. This court will not imply such a covenant so as to enlarge the construction of paragraph 28 and shift the burden to Bon Ton to bring the sprinkler system into conformity with the specifications of the landlord's insurance company.

---

**1.** In addition, the lease contains a standard general covenant in Paragraph 6 requiring the lessee to keep the premises in good repair. However, a legible copy of the first two pages of the lease at issue has not been submitted to the court with any of the memoranda or motions to be considered by the Court. The Court therefore looks only to the language in paragraphs 28 and 37 in disposing of this motion. It does not appear from what can be seen of paragraph 6 that a contrary result would be reached.

**2.** The memoranda disclose that an Ansul Type System is a fire extinguishing system which, when activated, forces dry chemicals by gas pressure through ducts or valves to the fire thereby extinguishing it.

Paragraph 37 requires Bon Ton to maintain the premises in an attractive appearance and good condition, making such repairs, improvements and alterations of a non-structural nature in connection therewith.

■ A lessee's general covenant to repair does not require him to make radical changes of a permanent, substantial or unusual character. *Bogan v. Postlewait,* 130 Ill.App.2d 729, 731, 265 N.E.2d 195, 197 (1970). Rather, a covenant to repair implies preservation of the status quo and does not mean replacement. When determining the intention of parties to a lease, the words used should be given their common and generally accepted meaning. *Kurek v. State Oil Co.,* 98 Ill.App.3d 6, 8, 53 Ill.Dec. 643, 645, 424 N.E.2d 56, 58 (1981). Within the plainly understood meaning of the clause of the lease, the *replacement* of the present fire extinguishing system is not a repair, improvement or alteration for which Bon Ton can be held responsible. The court will not enlarge Bon Ton's duty by construction. The responsibility in this case of replacing the previously available and utilized sprinkler system due to a subsequently discovered deficiency after the execution of the lease is that of the landlord.

WHEREFORE, IT IS ORDERED that the motion of Bernard A. Heerey to compel Bon Ton Restaurant and Pastry Shop, Inc., debtor and debtor-in-possession, to correct safety hazard, or in default thereof, to close its business, be and is hereby denied.

